IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RICARDO SANTIAGO VERA        *
     Plaintiff               *
                             *
                             *
vs.                          *        CIVIL NO. 98-2231 (JP)
                             *
                             *
WILLIAMS HOSPITALITY GROUP, INC.,   *
et al.                       *
     Defendants               *
                             *



## OPINION AND ORDER

### I.  INTRODUCTION AND BACKGROUND

The Court has before it Defendants' Motion for Summary Judgment and Memorandum of Law in Support Thereof (**docket No. 124**) and Plaintiff's Opposition thereto (docket No. 140). Plaintiff filed the Complaint in the instant case claiming that his former employer violated the Americans with Disabilities Act by failing to provide him with a day shift as a reasonable accommodation for his disability and by discharging him for being a disabled individual.

Defendants Williams Hospitality Group, Inc., Patriot American Hospitality, Inc., Wyndham International, Wyndham Management Corp., and Posadas de Puerto Rico Associates, Inc. d/b/a Condado Plaza Hotel and Casino (collectively, "Defendants") file the

CIVIL NO. 98-2231 (JP)          2

Motion at bar on several grounds.  First, Defendants state that Plaintiff is not a qualified individual under the ADA because the uncontested facts show that he could not attend his job on a regular basis, and therefore, could not perform an essential function of his job.  Second, Defendants state that by giving Plaintiff vacation time during the time he was experiencing health complications, a reasonable accommodation for his impairment was provided, and that to grant him his request for a change to a day shift would represent an undue hardship for the Hotel.  Third, Defendants state that Plaintiff's absences constituted a legitimate business reason for firing him.  Fourth, Defendants argue that by filing a Social Security claim, Plaintiff is estopped from pursuing this ADA claim.  Finally, Defendants contend that if the Court denies its summary judgment motion, the Court should hold that the uncontested evidence shows that Plaintiff's aggravated condition is not causally connected to his dismissal.  The Court considers Defendants' arguments seriatim.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment serves to "assess the proof in order to see whether there is a genuine need for a trial."  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  Under Rule 56(c) of the Federal Rules of Civil Procedure, a summary judgment is in order when "the record, including the pleadings, depositions,

CIVIL NO. 98-2231 (JP)          3

answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, [in this case the plaintiff,] reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First National Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Insurance Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1985).

In a summary judgment motion, the movants, in this case Defendants, bear the initial burden of "informing the district court of the basis for their motion and identifying those portions

CIVIL NO. 98-2231 (JP)              4

of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the movant does not bear the burden of proof at trial, it must show that no reasonable fact-finder could find that the non-movant, in this case Plaintiff, has established the requisite elements of its claim. Id. at 325. Once the moving party meets his burden of proof, the burden shifts to the non-movant, who may not "rest upon mere allegations or denials of . . . the pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Goldman, 985 F.2d at 1116; see Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 248.

**III. UNCONTESTED FACTS**

    1.    Plaintiff Ricardo Santiago ("Plaintiff") began working at San Juan's Condado Plaza Hotel and Casino ("the Hotel") on November 30, 1994 as a Casino Slot Cashier.

    2.    Soon after commencing employment at the Hotel, Plaintiff received a copy of the Hotel's Rules of Conduct and Discipline as well as the documents related to Hotel Policies.

    3.    At the time he started working at the Hotel, Plaintiff worked the day shift and was under the supervision of Ivette Rivera.

CIVIL NO. 98-2231 (JP)            5

4.   Plaintiff's wife at the time, Lillianne Echevarría, also
     worked   at   the   Hotel   during   Plaintiff's   tenure.
     Echevarría worked a day shift.

5.   On March 16, 1995, Plaintiff received a verbal warning
     from Ivette Rivera because on five occasions there were
     disparities   between   money   reported   and   money   that
     actually came into the slot operations.

6.   On May 31, 1995, Ivette Rivera completed Plaintiff's
     evaluation noting that he was meeting expectations in
     all   relevant   areas   measured   by   the   evaluation   and
     concluding that he was ready for a promotion.

7.   On June 1, 1995, Plaintiff was present during the day
     shift as Acting Slot Supervisor, and as such, had to
     supervise employees and prepare their schedules.

8.   On June 8, 1995, Ivette Rivera authorized Plaintiff's
     promotion to Slot Supervisor, retroactive to May 29,
     1995.

9.   Since Plaintiff started working as a Slot Supervisor,
     other Slot Supervisors had complained to Hotel officials
     about him being assigned to the day shift despite the
     fact that they had more seniority than him.

CIVIL NO. 98-2231 (JP)            6

10. Plaintiff separated from his wife, Lillianne Echevarría, after she was hospitalized at the San Juan Capestrano Mental Hospital.  Echevarría was hospitalized as a result of marital problems with Plaintiff and a suicide attempt.

11. On June 26, July 1, and July 2, 1995, Plaintiff did not sign the Hotel's attendance sheet despite being scheduled to work on those days.

12. On July 6, 1995, as a result of the marital problems he was experiencing, Plaintiff filed out a questionnaire to open a file with Dr. Dessie Vega, a psychiatrist. Plaintiff did not sign the Hotel's attendance sheet for that day.

13. Plaintiff was scheduled to work on July 13, July 17, July 21, July 28, July 29, August 3, 1995 and did not sign the attendance sheet on those days.

14. On August 23, 1995, Plaintiff went to a clinic in Carolina due to a cut wound in the right side of his neck.  Plaintiff did not sign the Hotel's attendance sheet on that day and did not have that day off.

15. Plaintiff did not sign the Hotel's attendance sheet on August 29, September 13, September 14, October 6 and October 8, 1995 and was not off on those days.

CIVIL NO. 98-2231 (JP)          7

16.  In August or September of 1995, Plaintiff was assigned
     to the night shift at the Condado Plaza.

17.  On October 10, 1995, during an appointment with Dr.
     Dessie Vega, Plaintiff expressed thoughts of suicide as
     well as homicidal ideas toward his wife Lillianne
     Echevarría.  Dr. Vega recommended that Plaintiff be
     hospitalized.

18.  Plaintiff did not report to work on October 13, 1995.

19.  Plaintiff was hospitalized at the San Juan Capestrano
     Hospital on October 14, 1995.

20.  On October 15, 1995, Ivette Rivera called Laura Trucco,
     Plaintiff's supervisor, to say that Plaintiff would be
     absent from work.

21.  Plaintiff was hospitalized and did not go to work from
     October 14 to October 25, 1995.  Of those days, however,
     Plaintiff had off days on October 16, 17, 23, and 24,
     1995.

22.  On October 25, 1995, Plaintiff called Laura Trucco to
     inform her that he had been released from the hospital
     and that he had an appointment with his psychiatrist,
     Dr. Vega, on October 31, 1995, at which time he would
     find out the date of his release for active work.

CIVIL NO. 98-2231 (JP)            8

23. Plaintiff did not go to work from October 25-31, 1995.

24. On October 31, 1995, Plaintiff called Laura Trucco and requested a meeting with her and with Eddie Torres, Condado Plaza's Human Resources Director. Plaintiff met with Trucco and Torres on that same date.

25. During that meeting, Plaintiff gave Trucco a medical certificate signed by Dr. Dessie Vega and requested to take off from November 1-9, 1995 and to have those days deducted from his vacation leave.

26. Initially, Trucco denied Plaintiff's vacation leave request stating that there were other employees waiting to take vacations. Santiago insisted, however, stating that he did not have sufficient accrued sick leave to cover until November 9. Trucco acceded and granted Plaintiff vacation leave until November 17, 1995.

27. During the October 31 meeting, Plaintiff told Trucco and Ortiz that he was taking medication, which made him drowsy and which had to be taken at night.

28. Plaintiff did not go to work from October 31 to November 17, 1995.

29. Although Dr. Vega indicated that, Plaintiff was capable of returning to work upon his October 25 release from the hospital, she recommended in her medical certificate

CIVIL NO. 98-2231 (JP)              9

that Plaintiff rest retroactively from October 25-
November 9, 1995. Plaintiff had informed Dr. Vega that
he had vacation days accumulated.

30. Dr. Vega also stated in the medical certificate that
Plaintiff should be assigned to a day shift because of
his psychiatric condition.

31. After receiving the medical certificate, Trucco did not
talk to Dr. Vega or the Hotel personnel regarding
Plaintiff's psychiatric condition.

32. Before dealing with Plaintiff's requests for
accommodation, Laura Trucco had not handled any prior
request for reasonable accommodation from any other
employee and had not received any type of training
regarding complaints of discrimination or the American
with Disabilities Act.

33. On November 14, 1995, Plaintiff called Trucco to inquire
about his request to be changed to the day shift and
Trucco responded that she was considering making
schedules according to seniority and because he did not
have the seniority to have a day shift, his request
would be denied. Plaintiff asked Trucco what was more
important his health or work. Trucco answered Plaintiff
with the same question.

CIVIL NO. 98-2231 (JP)          10

34. According to Dr. Vega, Plaintiff needed to take his medication at night and working at night was not recommendable for the success of the medication.

35. On November 17, 1995, Plaintiff came to his shift that started at 7:45 p.m. and he noticed a co-worker with less seniority working the "swing shift," which was from 3:00 p.m. to 11:00 p.m.

36. That evening, Plaintiff told an individual by the last name of either Usha or Matta that he was not feeling well and left a note in the Hotel log book to that effect and left the Hotel.

37. On November 18, 1999, Plaintiff called Angel Mercado at the Hotel to excuse himself from work because he was ill.   Plaintiff, however, did not specify what was wrong.

38. On November 19, 1999, Plaintiff called in sick, but this time left a message at the Hotel's Hospitality Desk because he could not reach anyone else who could take his message.

39. From November 17 to November 22, 1995, Laura Trucco consulted with the Human Resources department with respect to whether the Hotel should discharge Plaintiff.

CIVIL NO. 98-2231 (JP)          11

40.  Plaintiff had days off on November 20 and 21.  On November 22, 1995, Plaintiff was summoned to come to a meeting with Laura Trucco, where he was given his letter of discharge.

41.  In a letter in support of its decision to fire Plaintiff, the Hotel identified 41 days that Plaintiff was "out" of the operation of his department.  This calculation was made from October 14, 1995 and included his off days, vacation days, days of hospitalization.

42.  Plaintiff applied for Social Security disability benefits on December 29, 1997.

## IV. DISCUSSION

### A.  Whether Plaintiff is a Qualified Individual Under ADA

In the instant motion, Defendants state that, in view of the uncontested facts, Plaintiff is not a qualified individual eligible to invoke the protection of the ADA.  Defendants ground their position on two arguments, to wit:  Plaintiff's absences were excessive, and therefore, his erratic attendance made him unable to perform the essential functions of his job, and Plaintiff did not have the qualifications to occupy the Slot Supervisor position because he lacked the necessary experience. The Court will frame its discussion based on the ADA's statutory

CIVIL NO. 98-2231 (JP)          12

structure to determine whether Defendants' positions are grounded on uncontested facts.

The Americans with Disabilities Act was enacted to discourage employment discrimination against disabled individuals. A plaintiff who invokes the ADA's protection must establish that he or she is disabled, as defined by said act. In relevant part, the ADA states that an individual is disabled when he or she "has a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). In their Motion, Defendants do not dispute that Plaintiff is a disabled individual.

Besides a showing of being disabled, an ADA plaintiff must also be a "*qualified* individual with a disability." 42 U.S.C. § 12111(8) (emphasis added). An individual will be qualified if either with or without a reasonable accommodation, he or she can perform the essential functions of the job. See Southeastern Community College v. Davis, 442 U.S. 397, 406 (1979); Quint v. Staley Manufacturing Co., 172 F.3d 1, 9 n. 3 (1st Cir. 1999). That is to say, the Court must determine whether such individual "could perform the essential functions of the job," without an accommodation and if not, whether any reasonable accommodation by the employer would enable the individual to perform his or her essential job functions. Tyndall v. National Education Centers

CIVIL NO. 98-2231 (JP)          13

Incorporated of California, 31 F.3d 209, 213 (4th Cir. 1994)

(citing Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir.

1993)).

Unlike jobs that can be performed off-site, attendance is

generally an essential function of any job. See Nowak v. St. Rita

High School, 142 F.3d 999, 1003 (7th Cir. 1998) (citing Tyndall,

31 F.3d at 213). Rather than setting a threshold number of

absences before considering an employee not to be complying with

attendance, courts state that meeting the attendance requirement

means that an employee must come to work on a regular and reliable

basis. See Tyndall, 31 F.3d at 213 (citations omitted); see also

Aquinas v. Federal Express Corp., 940 F.Supp. 73, 78-79 (S.D.N.Y.

1996); Barfield v. Bell South Telecommunications, Inc., 886

F.Supp. 1321, 1326 (S.D. Miss. 1995). The requisite level of

attendance and regularity depends on the particular position or

job. See Carlson v. Inacom Corp., 885 F.Supp. 1314 (D. Neb.

1995). In view of this standard, the Court considers whether there

are issues of fact regarding Plaintiff's attendance.

First and foremost, the Court must address the reliability

of the attendance sheets and payroll to establish whether the

number of absences Plaintiff had can be uncontested at this stage.

Plaintiff has pointed to several instances in which Defendants

refer to the payroll or attendance sheets to establish that

CIVIL NO. 98-2231 (JP)            14

Plaintiff was absent.  Plaintiff, however, cites to three instances in which either the attendance sheet or the payroll have contradictory information.    For instance, Defendants have referred to the payroll for the proposition that on July 13 and 14, 1995, Plaintiff failed to sign his attendance sheet. Plaintiff's signature, however, appears in the attendance sheets for July 13 and 14, 1995.  Further, Defendants state that on September 13, 1995, Plaintiff failed to sign his attendance sheet, but there is a note signed by Plaintiff and dated September 13, 1995 in the Hotel's log book which suggests that Plaintiff was working on that day.  Besides these three inconsistencies, there is no other instance in which there appears to be an inconsistency between the documents.  Thus, the Court will go through the attendance sheet and payroll sheets and list the dates after June 1995 in which Plaintiff's signature does not appear in the attendance sheets and was not off or on vacation leave.  These are:  June 26, July 1, July 2, July 6, July 13, July 17, July 21, July 28, July 29, August 3, August 23, August 29, September 13, September 14, October 6, and October 8, 1995.  Therefore, there are 16 days from June 26 to October 8, 1995 in which Plaintiff failed to sign his attendance sheet.

The obvious question is whether Plaintiff's failure to sign the attendance sheets on a particular day establishes as

CIVIL NO. 98-2231 (JP)              15

uncontested for summary judgment purposes that he was absent on that particular day.  The Court does not think so.  Although Defendants state in their memorandum that it has always been their position that if an employee does not sign the attendance sheet he or she is considered absent, there is no evidence on the record which supports that proposition.  Further, Plaintiff includes a statement under penalty of perjury signed by Ivette Rivera which states that there was no policy stating that a managerial employee, like Plaintiff, was considered absent if he did not sign the attendance sheet.  In addition, the days that Plaintiff did not sign appear reflected in the payroll as "NF."  Although the Court finds that it is not a leap of faith to conclude that "NF" means "no firmó" or "no firma," which translates into English as "did not sign" or "no signature," such annotation does not necessarily mean that Plaintiff was absent.  The Hotel could be making the NF annotation to mean that although the employee did not sign, he or she was nevertheless present.  This could be the case, especially because the code of terms at the foot of the payroll sheets does not have a code for "NF" and has a code "A" for absence.  Therefore, the Court finds that there is an issue of fact with regards to whether or not Plaintiff was in attendance on those days in which he did not sign.

CIVIL NO. 98-2231 (JP)          16

Regarding Plaintiff's absences which started upon his October 13, 1995 hospitalization, Plaintiff was not absent from work 41 times as Defendants suggest. Out of the 40 days between October 13 and November 21, 1995, Plaintiff had 12 days off.[1] Furthermore, the Hotel authorized vacation leave for Plaintiff from November 1-5, November 8-12, and November 15 and 16, 1995. Therefore, Plaintiff had 12 days of vacation leave. In sum, Plaintiff had 24 days off during the 40 days between October 13 and November 22. Although this amount of absences is substantial, the Court finds that there is an issue of fact with regards to whether, based on the volume and type of work performed in the Casino, Plaintiff's absences were excessive. The "necessary level of attendance and regularity is a question of degree depending on the circumstances of each position." Walders v. Garett, 765 F.Supp. 303, 310 (E.D. Va. 1991) (citing School Board of Nassau County, Fla. v. Arline, 480 U.S. 273, 287-88 (1987)); see also Hendry v. GTE N., Inc., 896 F. Supp. 816 (N.D. Ind. 1995). For instance, the fact that there is no evidence on the record for the proposition that Plaintiff received a warning for being absent suggests that the absences may not have been as erratic or as

---

[1] Much like weekends for those who work based on a five day business week, the Condado Plaza, because it is open for business seven days a week gives its employees days off during the week. Therefore, Plaintiffs 12 days off are the equivalent of weekend days.

CIVIL NO. 98-2231 (JP)          17

excessive as Defendants suggests.  Further, that the Hotel gave

Plaintiff a vacation leave until November 17, five days before his

November 22 dismissal also cuts against Defendants' position.

Moreover, Plaintiff's absence from mid-October on was

uninterrupted and, therefore, does not suggest that the absences

were unpredictable or intermittent.  See <u>Santiago v. Temple</u>

<u>University</u>, 739 F.Supp. 974, 978 (E.D. Pa. 1990), <u>aff'd</u>, 928 F.2d

396 (3d Cir. 1991).  In view of the above, the Court determines

that there is an issue of fact as to how egregious Plaintiff's

attendance problem was in relation to the exigencies of his work.

Defendants also argue that Plaintiff is not a qualified

individual under the ADA because the uncontested evidence shows

that he did not possess the requisite skill and experience in

casino slots to occupy his position as a Slots Supervisor.

Plaintiff's position, however, is still contested.  Defendants

provide a job description for Slot Cashier Floor Supervisor, which

states that the position requires one to three years of experience

in supervision and money handling.  Although used as a guide,

Defendants acknowledge that the job description was not in effect

at the time of Plaintiff's hiring.  Providing a job description

which was not in effect is insufficient to trump Plaintiff's

claim, especially when there is no evidence on the record that

Defendants were bound in making hiring decisions.  Using the

CIVIL NO. 98-2231 (JP)          18

job description as a guide does not necessarily mean that Plaintiff was required to have such experience at the time he was hired.  Therefore, the Court will not summarily decide the issue of Plaintiff's qualifications.

**B.   The Accommodation of Plaintiff's Absences**

Even if Plaintiff was not complying with the requirement of attendance, the Court must still determine whether it is uncontested that Plaintiff's absences could not be reasonably accommodated.  See <u>Jackson v. Veteran's Administration</u>, 22 F.3d 277, 279 (11th Cir. 1994).  This inquiry into reasonable accommodation is one of the most complex aspects of the ADA.  <u>See generally</u>, Sam Silverman, <u>The ADA Interactive Process:  The Employer and Employee's Duty to Work Together to Identify a Reasonable Accommodation Is More Than a Game of Five Card Stud</u>, 77 Neb. L. Rev. 281 (1998).  Reasonable accommodations may include "job restructuring part-time or modified work schedules, . . . reassignment to a vacant position; . . . and other similar accommodations."  42 U.S.C. § 12111(9)(B).  In his Complaint, Plaintiff states that by not placing him in the day shift, the Hotel failed to reasonably accommodate him in his job and, therefore, violated the ADA.  Defendants counter that it is uncontested that Plaintiff was given more vacation days than he had requested and that changing Plaintiff's shift would place upon

CIVIL NO. 98-2231 (JP)          19

it an undue hardship.  In particular, Defendants state that it is uncontested that other slot supervisors who had more seniority than Plaintiff were upset by the fact that Plaintiff had been given a day shift at one point.  Further, Defendants state that it had a duty to keep Plaintiff separated from his wife Lillianne Echevarría because he had expressed homicidal ideas against her. The Court must therefore consider whether Plaintiff's position is supported by uncontested evidence.

A reasonable accommodation is a change made in a disabled employee's work to allow him or her to perform the essential functions of her job.  In a case of mental impairment, as is the case with Plaintiff, the disability, limitations, and necessary accommodations are not necessarily apparent or obvious to the employer, and therefore, the initial burden rests on the employee or his health care provider to identify the limitations and suggest accommodations to the employer.  See Taylor v. Principal Financial Group, Inc., 93 F.3d 155 (5th Cir. 1996); Miller v. National Gas Co., 61 F.3d 627, 629 (8th Cir. 1995).  In Taylor, the Fifth Circuit stated that "when dealing in the amorphous world of mental disability, we conclude that health-care providers are best positioned to diagnose an employee's disabilities, limitations, and possible accommodations." Taylor, 93 F.3d at 165.  The Court agrees with this reasoning.  Once this accommodation is requested

CIVIL NO. 98-2231 (JP)          20

and the employer receives the information regarding the employee's condition and limitations, the employee and the employer should begin an interactive process of discussing the viability of accommodations.

In the instant case, it is undisputed that Plaintiff met with his supervisor, Laura Trucco, and with Eddie Ortiz, the Human Resources Director, and that during the meeting Plaintiff gave Trucco and Ortiz the medical certificate from Dr. Dessie Vega.  It is also undisputed that the certificate recommends that Plaintiff be changed to a day shift as a result of his psychiatric condition.  Further, it is uncontested that Plaintiff told Trucco that the change in shift was a recommendation which was not necessary for the success of his treatment.  Despite telling Trucco that the change in shift was not indispensable for the success of the treatment, Plaintiff called Trucco on November 15, 1995 to inquire about his request for a day shift and asked her what was more important his health or his job.  In view of the uncontested evidence, the Court finds that the Hotel's duty to look into the possibility of an accommodation in the form of a change in shift was triggered in light of the information it possessed at that time.

Because Defendants' duty to inquire into the accommodation request was triggered, the Court must find whether there is

CIVIL NO. 98-2231 (JP)            21

a genuine issue of fact regarding whether the accommodation of the change in shift constituted an undue hardship for Defendants. In making such determination, the following factors are considered: the employer's financial resources, the number of persons employed at the facility, the effect on the expenses and resources and the impact of accommodation on the operation of the facility. <u>See E.E.O.C. v. Amego, Inc.</u>, 110 F.3d 135 (1st Cir. 1997). Therefore, an inquiry into the reasonableness of an accommodation is fact specific. At trial, to satisfy his burden of reasonableness, the plaintiff "must suggest the existence of a plausible accommodation, the costs of which do not exceed its benefits." <u>Hold v. Olmsted Township Board of Trustees</u>, 43 F.Supp.2d 812, 823 (N.D. Or. 1998) (citing <u>Cehrs v. Northeast Alzheimer's Research Center</u>, 155 F.3d 775. 781-82 (6th Cir. 1998)). Once the Plaintiff makes this showing, the employer shoulders the burden of proof that the accommodation is unreasonable and places an undue hardship on the employer.

    In the instant case, the Court finds that there is an issue of fact regarding the extent to which accommodating Plaintiff constituted a hardship for the Hotel. Although Defendants state that employees with more seniority would have complained over Plaintiff being assigned to the day shift, the extent of such complaints is far from established. Although employee disapproval

CIVIL NO. 98-2231 (JP)          22

does not per se rise to the threshold of undue hardship, if such protest reaches "chaotic personnel problems," the accommodation will result in undue hardship. Draper v. U.S. Pipeland Foundry Co., 527 F.2d 515, 520 (6th Cir. 1975). The same conclusion applies to Defendants' argument that placing Plaintiff in a day shift would be cumbersome for Lillianne Echevarría, who had a day shift in the Hotel. Defendants do not specify whether Hotel officials spoke to Echevarría or are only speculating with regards to those effects.

Next, the Court considers whether Defendants' arguments that the Hotel was justified in denying Plaintiff's accommodation because Plaintiff had made homicidal comments against Echevarría are valid. There is no evidence on the record for the proposition that Defendants knew about Plaintiff's statements at the time it decided not to accommodate Plaintiff. Plaintiff made these statements to Dr. Vega and Defendants learned about these comments during discovery. The Court will not consider such after-the-fact rationalizations as justification for the Hotel's decision not to accommodate Plaintiff. See McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 357-59 (1995); Fussell v. Georgia Ports Authority, 906 F.Supp. 1561, 1570 (S.D. Ga. 1995)(citing Schmidt v. Safeway, 864 F.Supp. 991, 99495 (D. Or. 1994)).

CIVIL NO. 98-2231 (JP)          23

Therefore, Defendants cannot rely on evidence acquired after its decision to not accommodate Plaintiff to justify its actions.

### C.   Discriminatory Discharge Claim

Defendants further propose that even if the Court considers Plaintiff's claim for a reasonable accommodation, the Court should dismiss his claim for a discriminatory discharge under ADA. Defendants state that the uncontested evidence is that Plaintiff engaged in a pattern of absenteeism "peppered with characteristics of insubordination and abandonment of employment." The Court has already decided that there are issues of fact pertaining to the degree of Plaintiff's absences.  Further, with regards to Defendants' statement that Plaintiff was dismissed because of insubordination, Defendants are extremely vague and do not substantiate this statement with any evidence.  Therefore, Defendants' claim for discriminatory discharge should be heard by a jury.

### D.   Estoppel

In the alternative, Defendants contend that if the Court finds issues of fact regarding Plaintiff's claims, the Court should still dismiss Plaintiff's claims because he is estopped from asserting them after pursuing and receiving Social Security disability benefits.  In particular, Defendants argue that because a Social Security benefits recipient must be deemed by the Social

CIVIL NO. 98-2231 (JP)          24

Security Administration to be totally disabled before receiving SSDI benefits, the recipient cannot be a qualified individual under the ADA because, under that statute, the plaintiff must be able to perform the essential functions of his job with or without accommodations.   Defendants cite for support the recent Supreme Court decision of Cleveland v. Policy Management Systems Corp., __ U.S. __, 119 S.Ct. 1597 (1999).

In Cleveland, the Supreme Court addressed whether "the law erects a special presumption that would significantly inhibit an SSDI recipient from simultaneously pursuing an action for disability discrimination under the [ADA]."   See Cleveland, __ U.S. at ___, 119 S.Ct. at 1599.   The Cleveland Court, by voice of Justice Breyer, noted that the two apparently divergent statutory contentions of ADA and SSDI claims are often consistent with each other, but that to survive a summary judgment motion, an ADA plaintiff who is an SSDI recipient must explain any apparent inconsistency.   See id. at 1600.

The Court finds that Plaintiff has made such a showing. First, Plaintiff applied for Social Security benefits on December 29, 1997, more than two years after being discharged from the Hotel.   Further, Plaintiff correctly indicates that Social Security claims do not consider whether the applicant could perform the job with a reasonable accommodation, and that in the

CIVIL NO. 98-2231 (JP)          25

instant case, his qualified status under the ADA hinges on whether

or not he could perform the job with a reasonable accommodation.

Third, Plaintiff provides evidence for the proposition that with

the accommodation he could perform his job.  Therefore, the Court

finds that Plaintiff can survive Defendants' estoppel arguments at

this summary judgment stage.

     **E.    Connection of Aggravation of Condition With Dismissal**

     Finally, Defendants argue that the uncontested evidence is

that Plaintiff's purported damages are not connected to his

dismissal from the Hotel, and, therefore, the Court should not

consider evidence of his aggravated condition.    The Court

disagrees.  The evidence Defendants provide for the proposition

that the discharge is unrelated to the discharge is vague and

fails to explain why the events with regards to the discharge are

unrelated to his damages.

**V.    CONCLUSION**

     In view of the above discussion, the Court finds that there

are issues of fact regarding Plaintiff's ADA claims for failing to

provide reasonable accommodation and for discharge, Defendants'

estoppel defense, and the extent of Plaintiff's damages.

CIVIL NO. 98-2231 (JP)          26

Therefore, the Court hereby **DENIES** Defendants' Motion for Summary

Judgment.

      **IT IS SO ORDERED AND ADJUDGED.**

    In San Juan, Puerto Rico, this 20th day of October, 1999.

                        JAIME PIERAS, JR.
                  U. S. SENIOR DISTRICT JUDGE